**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Chicago Mercantile Exchange Inc.

Plaintiff,

v.

ICE Clear US, Inc., ICE Clear Europe
Limited, and Intercontinental Exchange,
Inc.

Defendants.

Civil Action No. 18-cv-1378

Judge

**COMPLAINT FOR WILLFUL TRADEMARK COUNTERFETING, TRADEMARK
INFRINGEMENT, UNFAIR COMPETITION, BREACH OF CONTRACT AND ILLINOIS
STATE AND COMMON LAW CAUSES OF ACTION**

Plaintiff Chicago Mercantile Exchange Inc. brings this action against Defendants
ICE Clear US, Inc., ICE Clear Europe Limited, and Intercontinental Exchange, Inc. and
alleges as follows:

**NATURE OF ACTION**

1.     This action is for willful trademark counterfeiting, trademark infringement,
and unfair competition in violation of the Lanham Act, 15 U.S.C. §§ 1114(1) and
1125(a), breach of contract, deceptive trade practices in violation of the Illinois Uniform
Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 505/1 *et seq.*; and unfair competition
in violation of Illinois common law.

2.     This action results from Defendants' unauthorized and willful use of CME's
registered SPAN trademarks causing harm to CME in the State of Illinois and this
District.

**THE PARTIES**

1.      Plaintiff Chicago Mercantile Exchange Inc. is a Delaware corporation with its principal place of business at 20 South Wacker Drive, Chicago, Illinois 60606 ("CME").

2.      Defendant ICE Clear US, Inc. is a New York corporation with a principal place of business at One North End Avenue, New York, New York 10282-1101 ("ICE US").

3.      Defendant ICE Clear Europe Limited is an England and Wales private limited company with a principal place of business at Milton Gate, 60 Chiswell Street, London, EC1Y 4SA ("ICE Europe").

4.      Defendant Intercontinental Exchange, Inc. is a Delaware corporation with a principal place of business at 2100 RiverEdge Parkway, Atlanta, Georgia 30328 ("ICE"). Upon information and belief, ICE also has an office at 353 North Clark Street, Suite #3100, Chicago, Illinois 60654.

5.      In July 2007, CME and ICE US entered into a SPAN® License Agreement and ICE US submitted to jurisdiction of the United States District Court for the Northern District of Illinois and waived any objections based on venue in any suit arising or relating to the SPAN® License Agreement.

6.      In July 2007, CME and ICE Europe entered into a SPAN® License Agreement and ICE Europe submitted of jurisdiction to the United States District Court for the Northern District of Illinois and waived any objections based on venue in any suit arising or relating to the SPAN® License Agreement.

7.      Upon information and belief, ICE Clear Canada, Inc. ("ICE Canada"), ICE Clear Netherlands ("ICE Netherlands") and Ice Clear Singapore Pte. Ltd. ("ICE Singapore") are subsidiaries of ICE and use the SPAN Marks on their websites.

8.      Defendants transact business in this District and have sufficient minimum contacts with the State of Illinois.  Defendant ICE maintains an office with employees in Chicago, Illinois and likely has customers in the State of Illinois. Defendants have purposefully availed themselves of the benefits of doing business in Illinois by actually transacting business in Illinois, and can reasonably anticipate being hauled into court in Illinois.

9.      Defendant ICE US uses CME's SPAN Marks and operates the Internet website at https://www.theice.com/clear-us/risk-management (among other links on the website) that is accessible by and targets residents of Illinois and this District. Defendant ICE US intentionally uses, without authorization, marks identical or confusingly similar to CME's registered SPAN®, PC-SPAN® and SPAN RISK MANAGER® trademarks. As a result, the harm felt by CME is most felt in Illinois – its residence for more than one hundred and fifty years.

10.      Defendant ICE Europe uses CME's SPAN Marks and operates the Internet website at https://www.theice.com/clear-europe/risk-management (among other links on the website) that is accessible by and targets residents of Illinois and this District.  Defendant ICE Europe intentionally uses, without authorization, marks identical or confusingly similar to CME's registered SPAN®, PC-SPAN® and SPAN RISK MANAGER® trademarks.  As a result, the harm felt by CME is most felt in Illinois – its residence for more than one hundred and fifty years.

3

11. Upon information and belief, ICE Canada, ICE Netherlands and ICE Singapore are all subsidiaries of ICE. ICE and these subsidiaries use CME's SPAN Marks and operate the Internet websites at https://www.theice.com/clear-canada/risk-management; https://www.theice.com/clear-netherlands/risk-management; and https://www.theice.com/clear-singapore/risk-management (among other links on the websites) that are accessible by and target residents of Illinois and this District. Defendant ICE intentionally uses, without authorization, marks identical or confusingly similar to CME's registered SPAN®, PC-SPAN® and SPAN RISK MANAGER® trademarks. As a result, the harm felt by CME is most felt in Illinois – its residence for more than one hundred and fifty years.

12. In undertaking these deliberate acts, including all facts and allegations set forth below, which are incorporated herein by reference, Defendants had fair warning they may be called before an Illinois court in this District.

### JURISDICTION AND VENUE

13. This Court has original subject matter jurisdiction over CME's federal claims pursuant to the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental jurisdiction over CME's breach of contract and other state law claims pursuant to 28 U.S.C. §§ 1338(b) and 1367.

14. This Court has personal jurisdiction over Defendants pursuant to the Illinois long-arm statute, 735 Ill. Comp. Stat. 5/2-209 *et seq.* and such an assertion is in accordance with the Due Process clause of the Fourteenth Amendment of the United States Constitution.

15.     Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. § 1391, because CME is doing business in this District, the claims arose in this District, and a substantial part of the events giving rise to the claims occurred in this District. Defendants ICE US and ICE Europe agreed to venue in this District.  Moreover, Defendants transact business in this District, have committed tortious acts in this District and have engaged in activities that subject them to the jurisdiction of this Court.  Finally, because Defendants are subject to personal jurisdiction in this District, venue is proper in this District.

16.     Assignment of this action to the Eastern Division is proper because a substantial part of the events giving rise to the claims alleged herein occurred in this Division.

### CME's Long and Distinguished History

17.     CME is part of CME Group Inc. ("CME Group"), which is the world's largest and most diverse financial exchange with a history dating back to 1848.  CME Group offers futures and options in all major asset classes, such as metals, commodities, foreign exchange, energy, weather, interest rates, equity indexes and other products through four exchanges: CME or Chicago Mercantile Exchange, CBOT or Chicago Board of Trade, COMEX or Commodity Exchange, and NYMEX or New York Mercantile Exchange.  For decades, CME Group has been a leader in the financial services industry and earned its place as a trustworthy provider of cutting edge financial products and services.  CME Group's operations now extend globally with offices in the U.S., Canada, China, Brazil, India, United Kingdom, Singapore, Hong Kong, Korea, and Japan.

5

18.     Originally founded in 1898 as the Chicago Butter and Egg Board, CME began using the CME name in 1919.  For more than one hundred years, traders, financial institutions, investors, corporations and governments have come to rely upon and trust CME for their financial and risk management services related to the trading of commodities.

19.     CME first developed the SPAN framework and created the distinctive SPAN trademark in 1988 to effectively assess risk on an overall portfolio basis. The SPAN framework is a market simulation-based system, which has been reviewed and approved by market regulators and participants worldwide. The SPAN framework assesses risk for a wide variety of financial instruments including: futures, options, physicals, equities, or any combination thereof. Specifically, the SPAN framework assesses the risk of a portfolio, by calculating the maximum likely loss that could be suffered by the portfolio based on parameters set by the margin-setting authority, usually an exchange or clearing organization. The SPAN framework also is the official Performance Bond mechanism of 54 exchanges and clearing organizations world-wide, making it the global standard for portfolio margining.

20.     The core of SPAN risk analysis is to simulate potential market moves and calculate the profit or loss on individual contracts given the market moves. Exchanges may determine any number of market scenarios to be included in the SPAN analysis. Most exchanges and clearing organizations that use the SPAN framework use sixteen (16) different scenarios ("16 Scenario Methodology").

21.     Under the SPAN brand, CME offers a suite of risk management services and software products that are designed to meet the needs of a wide range of

customers. The four core software products are: PC-SPAN (a single-user desktop application that offers margin calculation across multiple exchanges); SPAN Risk Manager (PC-SPAN plus risk analytics); SPAN Real-Time Component Interface (software module that interacts with PC-SPAN to deliver near real-time margin calculations); and SPAN Risk Manager Clearing (SPAN Risk Manager plus real-time margining, plus risk array calculations and production of SPAN risk parameter files).

22.     CME also licenses the use of its SPAN Marks to third parties via written license agreements.

23.     The website at www.cmegroup.com ("CME Website") serves as a primary marketing tool for CME and as a primary point of communication between CME and its customers.  Not only do CME's current and prospective customers, partners and financial market participants rely upon the CME Website to obtain key information about SPAN, they also access the CME Website download and use SPAN software.  The CME Web site is accessed and used by these customers each and every day. A recent screenshot from the CME Website regarding the SPAN offering is shown below:



**CME'S SPAN TRADEMARKS**

24.     CME owns extensive common law rights in its family of SPAN trademarks, including but not limited to such trademarks as SPAN, PC-SPAN, SPAN Risk Manager, SPAN Risk Manager Clearing, and SPAN Real-Time Component Interface in connection with a wide variety of financial-related goods and services, including computer software, web-based platform, financial trading services, risk management services, financial portfolio risk analysis, risk margining services for futures and options exchange and clearing organizations and related financial services.  Since first using the SPAN mark in U.S. commerce in 1989, CME has continued to use the SPAN trademarks in connection with these goods and services.

25.     CME also owns the following United States Trademark Registrations for its SPAN and SPAN-formative marks, all of which are legally and validly registered on the Principal Register of the United States Patent and Trademark Office ("USPTO") (collectively, "SPAN Registrations"):

| Mark | Reg. No. | International Class(es) | Status |
|---|---|---|---|
| SPAN® | 1,689,883 | 9 | Incontestable |
| SPAN® | 2,386,878 | 36 | Incontestable |
| PC-SPAN® | 1,689,882 | 9 | Incontestable |
| SPAN RISK MANAGER® | 2,828,376 | 9 | Incontestable |

Copies of the Certificates of Registration and USPTO Trademark Status and Document Retrieval ("TSDR") printouts for these SPAN Registrations are attached as Exhibit A.

26.     CME's federal registrations for SPAN®, PC-SPAN® and SPAN RISK MANAGER® are incontestable under 15 U.S.C. § 1065.  CME's incontestable

8

registrations are conclusive evidence of the validity of the marks listed in the registrations, CME's ownership of the marks, and CME's exclusive right to use the marks in commerce in connection with the identified goods and services. 15 U.S.C. § 1115(b).

27.     In addition, CME owns foreign trademark registrations for SPAN® in Argentina, Australia, Canada, China, European Community, France, Hong Kong, India, Japan, Korea, Mexico, New Zealand, Singapore, South Africa, Taiwan, and the United Kingdom. These registrations are valid, subsisting and in full force and effect. All of these marks have been registered since long prior to the acts of Defendants complained herein.

28.     CME also owns the following pending United States trademark application, which was legally and validly filed with the USPTO ("SPAN Application"):

| Mark | Ser. No. | International Class(es) | Status |
|------|----------|------------------------|--------|
| SPAN | 87/807,784 | 9, 36 and 42 | Filed |

A copy of the filing receipt for the SPAN Application is attached as Exhibit B.

29.     The marks reflected in the SPAN Registrations together with CME's extensive common law rights in SPAN are hereinafter referred to as the "SPAN Marks."

30.     CME uses the SPAN Marks in advertising, marketing and promotional materials on a nationwide and worldwide basis through various media, including but not limited to, the Internet and customer communications. The success of CME's SPAN® software, financial, risk management, and related goods and services is due, in part, to the extensive promotion and advertising CME has undertaken for the SPAN Marks.

9

CME annually spends a significant amount of money on promoting and protecting the SPAN Marks.

31.     CME's extensive use and advertising of the SPAN Marks has resulted in consumer recognition that the SPAN Marks identify CME as the source of premier financial and risk management goods and services.  The SPAN Marks are assets of incalculable value and an identifier of CME goods and services, and goodwill.

32.     The SPAN Marks are inherently distinctive and well-known for CME's goods and services, and valuable consumer goodwill exists in the SPAN Marks.  The SPAN Marks symbolize an exceptional level of quality, reliability and trustworthiness, which are crucial qualities in the financial trading and clearing fields.  Such goodwill was generated long before Defendants' use of marks identical or confusingly similar to the SPAN Marks.

### DEFENDANTS' INFRINGING CONDUCT IN VIOLATION OF CME'S SPAN MARKS

33.     In July 2007, CME and ICE US entered into a written SPAN® License Agreement whereby ICE US was granted a license to use the SPAN Marks on and in connection with a risk evaluation and margin framework including certain processes, programs, publications and systems ("SPAN Framework") for a term of ten (10) years.

34.     In July 2007, CME and ICE Europe entered into a written SPAN® License Agreement whereby ICE US was granted a license to use the SPAN Marks on and in connection with the SPAN Framework for a term of ten (10) years.

35.     Both of the SPAN® license agreements are collectively hereinafter referred to as the "SPAN® License Agreements."

36.     In the SPAN® License Agreements, ICE US and ICE Europe agreed that the SPAN trademark was the exclusive property of CME.

37.     In the SPAN® License Agreements, ICE US and ICE Europe covenanted and agreed that upon the termination of the agreements, ICE US and ICE Europe would "not use any mark that is confusingly similar to the SPAN Mark in connection with any other margining system or similar risk calculation."

38.     CME determined Defendants' use of the SPAN Marks violated the SPAN® License Agreements and/or infringed upon CME's trademark rights.

39.     The SPAN® License Agreements expired in July 2017 and were not renewed.

40.     In August 2017, CME informed Defendants in writing of their continued misuse of the SPAN Marks. Subsequently in September, a CME representative conferred with an ICE representative to discuss the continued infringing use of the SPAN Marks.

41.     During the telephone call, Defendants agreed to rectify the situation and cease all use of CME's SPAN Marks from ICE's websites and other materials.

42.     Now six months later, Defendants failed to take a single step to cease their infringing use of CME's SPAN Marks.

43.      Specifically, despite the expiration of the SPAN® License Agreements and constructive and actual knowledge of CME's prior registered rights to the SPAN Marks, Defendant ICE US continues to use CME's SPAN Marks on its website and in connection with its risk management services. A printout of the ICE US Website is attached as Exhibit C.  A screenshot of the ICE US Website is shown below:



44.     The ICE US Website prominently uses the SPAN Marks without authorization from CME.

45.     Moreover, ICE US admits SPAN® is a registered trademark of CME via a trademark disclaimer on its website. See Exhibit C.  A screenshot of the ICE US disclaimer is shown below:

Neither Intercontinental Exchange, Inc. nor any of its affiliates is the source of SPAN®. The SPAN® methodology was developed by Chicago Mercantile Exchange Inc. and is used by Intercontinental Exchange, Inc. and its affiliates to develop customized versions of SPAN®. SPAN® is a registered trademark of Chicago Mercantile Exchange Inc., used herein under license. Chicago Mercantile Exchange Inc. assumes no liability in connection with the use of SPAN® by any person or entity.

46.     Despite the expiration of the SPAN® License Agreements and constructive and actual knowledge of CME's prior registered rights to the SPAN Marks, Defendant ICE Europe also continues to use CME's SPAN Marks on its website and in connection with its risk management services. A printout of the ICE Europe Website is attached as Exhibit D.  A screenshot of the ICE Europe Website is shown below:

12



47.     The ICE Europe Website prominently uses the SPAN Marks without authorization from CME.

48.     Moreover, ICE Europe also admits SPAN® is a registered trademark of CME via a trademark disclaimer on its website. See Exhibit D.  A screenshot of the ICE Europe disclaimer is shown below:

> SPAN® is a registered trademark of Chicago Mercantile Exchange Inc., used herein under license. Chicago Mercantile Exchange Inc. assumes no liability in connection with the use of SPAN® by any person or entity.
>
> Neither Intercontinental Exchange, Inc. nor any of its affiliates is the source of SPAN®. The SPAN® methodology was developed by Chicago Mercantile Exchange Inc. and is used by Intercontinental Exchange, Inc. and its affiliates to develop customized versions of SPAN®. SPAN® is a registered trademark of Chicago Mercantile Exchange Inc., used herein under license. Chicago Mercantile Exchange Inc. assumes no liability in connection with the use of SPAN® by any person or entity.

49.     Finally, despite constructive and actual knowledge of CME's prior registered rights to the SPAN Marks and without any authorization, Defendant ICE uses CME's SPAN Marks in connection with its risk management services, including on its ICE Canada, ICE Netherlands and ICE Singapore websites. Printouts of the ICE websites are attached as Exhibit E.  Screenshots of the ICE websites are shown below:

## ICE Canada



## ICE Netherlands



ICE Singapore



50.     The ICE Canada, ICE Netherlands and ICE Singapore websites, all controlled by ICE, prominently use the SPAN Marks without authorization from CME.

51.     Moreover, ICE also admits SPAN® is a registered trademark of CME via trademark disclaimer on its respective websites and falsely states the use is licensed, when no such license exists. See Exhibit E.  Screenshots of the ICE Canada, ICE Netherlands and ICE Singapore disclaimers are shown below:

ICE Canada

SPAN® is a registered trademark of Chicago Mercantile Exchange Inc., used herein under license. Chicago Mercantile Exchange Inc. assumes no liability in connection with the use of SPAN® by any person or entity.

Neither Intercontinental Exchange, Inc. nor any of its affiliates is the source of SPAN®. The SPAN® methodology was developed by Chicago Mercantile Exchange Inc. and is used by Intercontinental Exchange, Inc. and its affiliates to develop customized versions of SPAN®. SPAN® is a registered trademark of Chicago Mercantile Exchange Inc., used herein under license. Chicago Mercantile Exchange Inc. assumes no liability in connection with the use of SPAN® by any person or entity.

ICE Netherlands

SPAN® is a registered trademark of Chicago Mercantile Exchange Inc., used herein under license. Chicago Mercantile Exchange Inc. assumes no liability in connection with the use of SPAN® by any person or entity.

Neither Intercontinental Exchange, Inc. nor any of its affiliates is the source of SPAN®. The SPAN® methodology was developed by Chicago Mercantile Exchange Inc. and is used by Intercontinental Exchange, Inc. and its affiliates to develop customized versions of SPAN®. SPAN® is a registered trademark of Chicago Mercantile Exchange Inc., used herein under license. Chicago Mercantile Exchange Inc. assumes no liability in connection with the use of SPAN® by any person or entity.

ICE Singapore

SPAN® is a registered trademark of Chicago Mercantile Exchange Inc., used herein under license. Chicago Mercantile Exchange Inc. assumes no liability in connection with the use of SPAN® by any person or entity.

Neither Intercontinental Exchange, Inc. nor any of its affiliates is the source of SPAN®. The SPAN® methodology was developed by Chicago Mercantile Exchange Inc. and is used by Intercontinental Exchange, Inc. and its affiliates to develop customized versions of SPAN®. SPAN® is a registered trademark of Chicago Mercantile Exchange Inc., used herein under license. Chicago Mercantile Exchange Inc. assumes no liability in connection with the use of SPAN® by any person or entity.

52.     Defendants offer a software margin calculation tool under the SPAN®
trademark that was last updated in November 2017, several months after the SPAN®
License Agreements expired.

53.     Defendants had constructive notice of CME's ownership of the federally
registered rights to the SPAN Marks under 15 U.S.C. §1072, at least as early as 1989.

54.     The SPAN® License Agreements with ICE US and ICE Europe expired in
July 2017.  Since that time, CME has not authorized, licensed or otherwise permitted
Defendants to use the SPAN Marks, or any confusingly similar variation thereof.

55.     Simply put, there is no legitimate reason or need for Defendants to use the
SPAN Marks.

### DEFENDANTS' INTENTIONAL ACTIONS HAVE CAUSED EXTENSIVE HARM AND DAMAGE TO CME

56.     Defendants' willful actions are intentional and intended to trade on the
reputation and goodwill of the SPAN Marks.  Defendants had actual knowledge and
constructive notice of CME's ownership of the SPAN Marks. Moreover, Defendants
acknowledged CME's ownership of the SPAN Marks in the SPAN® License
Agreements.  Despite this, Defendants proceeded to willfully infringe upon CME's rights.

57.     Defendants' use of the SPAN Marks is likely to mislead, deceive, and
confuse the purchasing public and the trade.  It is likely that consumers will mistakenly
believe that Defendants are connected, associated or in some way affiliated with CME,

when in fact no such connection, association or affiliation exists, especially because the SPAN® License Agreements expired in July 2017.

58.     Defendants' conduct causes damage and irreparable injury to CME, and to its goodwill and business reputation.  As a direct and proximate result of Defendants' infringement of the SPAN Marks, CME has suffered, and will continue to suffer, irreparable harm, damages and economic injury.

## COUNT I

### FEDERAL TRADEMARK COUNTERFEITING (REGISTERED MARKS) 15 U.S.C. § 1114

59.     As the first ground for relief, CME alleges violation of 15 U.S.C. § 1114. CME repeats and realleges the allegations of paragraphs 1 through 58, as though fully set forth herein.

60.     CME owns exclusive rights in the U.S. registration for the mark SPAN® Registration No. 2,386,878 and this registration covers risk margining services for futures and options exchanges and clearing organizations.

61.     CME owns exclusive rights in the U.S. registration for the mark SPAN® Registration No. 1,689,883 and this registration covers computer programs for analysis of risk margin requirements in futures and securities trading.

62.     Defendants have knowledge of CME's registered rights in the SPAN® trademark.

63.     Without CME's authorization or consent, Defendants use marks identical or substantially indistinguishable from the registered SPAN® trademark.  Defendants offer and advertise risk margining services for their futures and options exchanges and

17

clearing organizations ("Counterfeit Services") and a software margin calculation tool ("Counterfeit Software"). As a result, Defendants have engaged in trademark counterfeiting in violation of 15 U.S.C. § 1114.

64. Defendants' use of the marks identical or substantially indistinguishable from the registered SPAN® trademark in connection with identical goods and services is likely to cause and is causing confusion, mistake and deception among consumers as to the origin of the Counterfeit Services and Counterfeit Software, and is likely to deceive the public into believing the Counterfeit Services and Counterfeit Software being offered and advertised by Defendants originate from, are associated with, or are otherwise authorized by CME, all to the damage and detriment of CME's reputation and goodwill.

65. Defendants' acts have occurred in interstate commerce and have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to CME, for which CME has no adequate remedy at law.

## COUNT II

### FEDERAL TRADEMARK INFRINGEMENT
### (REGISTERED MARKS)
### 15 U.S.C. § 1114(1)

66. As the second ground for relief, CME alleges violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1). CME repeats and realleges the allegations of paragraphs 1 through 65, as though fully set forth herein.

67. As stated above, CME owns exclusive rights in U.S. registrations for the SPAN Registrations of which Defendants either had actual or constructive notice.

68.     Defendants' unauthorized and infringing use of the SPAN Registrations, as alleged herein, is likely to cause confusion, mistake or deception as to the source, sponsorship or approval of Defendants' goods and services by CME.  The consuming public and the trade are likely to believe that Defendants' goods and services originate with CME, are licensed, sponsored or approved by CME, or in some way connected with or related to CME, in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

69.     Defendants' unauthorized and infringing use of the SPAN Registrations, as alleged herein, constitutes intentional and willful infringement of CME's rights in and to their federally registered trademarks, as pled herein, in violation Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

70.     These infringing acts have occurred in interstate commerce and have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to CME, for which CME has no adequate remedy at law.

## COUNT III

### FEDERAL UNFAIR COMPETITION
### 15 U.S.C. § 1125(a)

71.     As the third ground for relief, CME alleges violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  CME repeats and realleges the allegations of paragraphs 1 through 70, as though fully set forth herein.

72.     Defendants' unauthorized use of the SPAN Marks, as alleged herein, constitutes use of a false designation of origin and false or misleading representation in interstate commerce, which wrongly and falsely designates, describes and represents the origin of Defendants' goods and services as originating from or being connected

19

with CME, and is likely to cause confusion, or to cause mistake, or to deceive as to Defendants' affiliation, connection or association with CME, or as to the origin, sponsorship or approval of Defendants' goods and services by CME in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

73.     These acts have occurred in interstate commerce and have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to CME, for which CME has no adequate remedy at law.

**COUNT IV**

**BREACH OF CONTRACT**<br>**(AS TO DEFENDANTS ICE CLEAR US, INC. AND ICE CLEAR EUROPE LIMITED)**

74.     As the fourth ground for relief, CME alleges violation of breach of contract. CME repeats and realleges the allegations of paragraphs 1 through 73, as though fully set forth herein.

75.     Use of CME's SPAN Marks by ICE US and ICE Europe is governed by and subject to the SPAN® License Agreements.

76.     The written SPAN® License Agreements are valid, enforceable and binding upon ICE US and ICE Europe and included post expiration obligations on ICE US and ICE Europe.

77.     In the SPAN® License Agreements, ICE US and ICE Europe covenanted and agreed that upon the termination of the agreements, ICE US and ICE Europe would "not use any mark that is confusingly similar to the SPAN Mark in connection with any other margining system or similar risk calculation."

78.     Despite the termination of the SPAN® License Agreements in July 2017, ICE US and ICE Europe continue to use CME's SPAN Marks on their websites and in

20

connection with their risk management services, all without the consent or authorization from CME.

79.     CME has in the past contacted or communicated with ICE US and ICE Europe to demand that they cease and desist their infringing use of CME's SPAN Marks in violation of the SPAN® License Agreements.

80.     The actions of ICE US and ICE Europe, as described above, have willfully, repeatedly, materially, and systematically breached the SPAN® License Agreements.

81.     CME has performed all conditions, covenants, and promises required of it in accordance with the SPAN® License Agreements.

82.     The conduct of ICE US and ICE Europe has damaged CME, and caused and continues to cause irreparable harm and injury to CME.

83.     CME is entitled to injunctive relief, compensatory damages, and/or other equitable and punitive relief.

## COUNT V

### ILLINOIS DECEPTIVE TRADE PRACTICES
### 815 Ill. Comp. Stat. 510/1 *et seq.*

84.     As the fifth ground for relief, CME alleges violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1, *et seq.*  CME repeats and realleges the allegations of paragraphs 1 through 83 as though fully set forth herein.

85.     Defendants' unauthorized use of the SPAN Marks, as alleged herein, has caused, and is likely to cause in the future, a likelihood of confusion or misunderstanding as to the sponsorship, approval, affiliation or connection of Defendants' and CME's businesses, inasmuch as it gives rise to the incorrect belief that Defendants' businesses have some connection with CME.  These acts constitute

21

deceptive trade practices in the course of Defendants' businesses in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. 510/1, *et seq.*

86.     These acts have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to CME, for which CME has no adequate remedy at law.

## COUNT VI

### ILLINOIS COMMON LAW UNFAIR COMPETITION

87.     As the sixth ground for relief, CME hereby alleges unfair competition under Illinois common law.  CME repeats and realleges the allegations of paragraphs 1 through 86, as though fully set forth herein.

88.     As a result of its actions complained of herein, Defendants have misappropriated valuable property rights of CME, have passed off their goods and services as those of CME's, are trading off the goodwill symbolized by the SPAN Marks, and are likely to cause confusion or mistake, or to deceive members of the consuming public and the trade.  These acts constitute unfair competition in violation of the common law of the State of Illinois.

89.     These acts have caused, and unless restrained by this Court will continue to cause, serious and irreparable injury to CME, for which CME has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, CME prays that this Court enter a judgment and order:

**AGAINST DEFENDANTS:  ICE Clear US, Inc. and ICE Clear Europe Limited:**

1.      That Defendants ICE Clear US, Inc. and ICE Clear Europe Limited willfully violated Sections 32(1) and 43(a) of the Lanham Act;

2.      The Defendants ICE Clear US, Inc. and ICE Clear Europe Limited willfully breached the SPAN® License Agreements;

3.      That Defendants ICE Clear US, Inc. and ICE Clear Europe Limited committed acts of unfair competition, deceptive business and trade practices under Illinois common and statutory law;

4.      That Defendants ICE Clear US, Inc. and ICE Clear Europe Limited and their officers, directors, agents, servants, employees, affiliates, successors, shareholders, assigns and attorneys, as well as all those in active concert or participation with them, be preliminarily and permanently enjoined and restrained from:

      A.      Using the SPAN Marks, including but not limited to the marks SPAN, PC-SPAN, SPAN RISK MANAGER, SPAN RISK MANAGER CLEARING, and SPAN REAL-TIME COMPONENT INTERFACE or any reproduction, counterfeit, copy, or colorable imitation thereof in any manner in connection with the sale, offering for sale, distribution, or advertising of any goods or services that are not genuine CME goods or services or not authorized by CME;

      B.      Using any name, mark, or domain name that wholly incorporates the SPAN Marks or is confusingly similar to, including but not

limited to any reproduction, counterfeit, copy or a colorable imitation

of, the SPAN Marks;

C.    Doing any other act or thing calculated or likely to induce or cause

confusion or the mistaken belief that Defendants are in any way

affiliated, connected, or associated with CME or its services;

D.    Licensing or authorizing others to use the SPAN Marks or any

confusingly similar mark;

E.    Injuring CME's business reputation and the goodwill associated

with the SPAN Marks, and from otherwise unfairly competing with

CME in any manner whatsoever; and

F.    Otherwise passing off Defendants' goods or services as those of

CME.

5.    That, pursuant to 15 U.S.C. §1118, Defendants ICE Clear US, Inc. and
ICE Clear Europe Limited be required to deliver up and destroy all documents, manuals,
software, files, products, labels, signs, packages, wrappers, advertisements, promotions
and all other matter in the custody or under the control of Defendants that bear the
SPAN Marks or any other mark that is likely to be confused with the SPAN Marks;

6.    That, because of Defendants ICE Clear US, Inc. and ICE Clear Europe
Limited's willful actions and pursuant to 15 U.S.C. § 1117 CME be awarded monetary
relief in an amount to be fixed by the Court in its discretion as just, including:

A.  all profits received by Defendants from sales and revenues of any kind

made as a result of their actions, and all damages sustained by CME

as a result of Defendants' actions, and that such profits and damages be trebled because of Defendants' exceptional and willful conduct;

B. and/or, if CME so elects, an award for statutory damages pursuant to 15 U.S.C. § 1117(c)(2) consisting of $2,000,000 per counterfeit mark, per type of services sold, offered for sale or distributed; and

C. The costs of the action.

7. That because of trademark counterfeiting and the exceptional nature of this case resulting from Defendants' deliberate and willful infringing actions, this Court award to CME all reasonable attorneys' fees, costs and disbursements incurred by it as a result of this action, pursuant to 15 U.S.C. §§ 1117(a) and (b) and 815 Ill. Comp. Stat. §510/3;

8. That CME shall have such other and further relief as this Court may deem just.

**AGAINST DEFENDANT:  Intercontinental Exchange, Inc.:**

1. That Defendant Intercontinental Exchange, Inc. willfully violated Sections 32(1) and 43(a) of the Lanham Act;

2. That Defendant Intercontinental Exchange, Inc. committed acts of unfair competition, deceptive business and trade practices under Illinois common and statutory law;

3. That Defendant Intercontinental Exchange, Inc. and its officers, directors, agents, servants, employees, affiliates, subsidiaries, including but not limited to ICE Clear Canada, ICE Clear Singapore and ICE Clear Netherlands, successors,

shareholders, assigns and attorneys, as well as all those in active concert or participation with them, be preliminarily and permanently enjoined and restrained from:

A. Using the SPAN Marks, including but not limited to the marks SPAN, PC-SPAN, SPAN RISK MANAGER, SPAN RISK MANAGER CLEARING, and SPAN REAL-TIME COMPONENT INTERFACE or any reproduction, counterfeit, copy, or colorable imitation thereof in any manner in connection with the sale, offering for sale, distribution, or advertising of any goods or services that are not genuine CME goods or services or not authorized by CME;

B. Using any name, mark, or domain name that wholly incorporates the SPAN Marks or is confusingly similar to, including but not limited to any reproduction, counterfeit, copy or a colorable imitation of, the SPAN Marks;

C. Doing any other act or thing calculated or likely to induce or cause confusion or the mistaken belief that Defendant is in any way affiliated, connected, or associated with CME or its services;

D. Licensing or authorizing others to use the SPAN Marks or any confusingly similar mark;

E. Injuring CME's business reputation and the goodwill associated with the SPAN Marks, and from otherwise unfairly competing with CME in any manner whatsoever; and

F. Otherwise passing off Defendant's goods or services as those of CME.

4. That, pursuant to 15 U.S.C. §1118, Defendant Intercontinental Exchange, Inc. be required to deliver up and destroy all documents, manuals, software, files, products, labels, signs, packages, wrappers, advertisements, promotions and all other matter in the custody or under the control of Defendant that bear the SPAN Marks or any other mark that is likely to be confused with the SPAN Marks;

5. That, because of Defendant Intercontinental Exchange, Inc.'s willful actions and pursuant to 15 U.S.C. § 1117 CME be awarded monetary relief in an amount to be fixed by the Court in its discretion as just, including:

> A. all profits received by Defendant's from sales and revenues of any kind made as a result of its actions, and all damages sustained by CME as a result of Defendant's actions, and that such profits and damages be trebled because of Defendant's exceptional and willful conduct;

> B. or, if CME so elects, an award for statutory damages pursuant to 15 U.S.C. § 1117(c)(2) consisting of $2,000,000 per counterfeit mark, per type of services sold, offered for sale or distributed; and

> C. The costs of the action.

6. That because of trademark counterfeiting and the exceptional nature of this case resulting from Defendant's deliberate and willful infringing actions, this Court award to CME all reasonable attorneys' fees, costs and disbursements incurred by it as a result of this action, pursuant to 15 U.S.C. §§ 1117(a) and (b) and 815 Ill. Comp. Stat. §510/3;

7. That CME shall have such other and further relief as this Court may deem just.

Respectfully submitted,

CHICAGO MERCANTILE EXCHANGE INC.,


Dated: <u>February 23, 2018</u>    By:    <u>/s/ Christine A. Filarski</u>
Joseph V. Norvell (Reg. No. 6225747)
Joseph T. Kucala, Jr. (Reg. No. 6275312)
Christine A. Filarski (Reg. No. 6306020)
NORVELL IP LLC
333 South Wabash Ave.
Suite 2700
Chicago, IL 60604
Telephone:   (888) 315-0732
Facsimile:    (312) 268-5063
courts@norvellip.com

*Attorneys for Plaintiff*
*Chicago Mercantile Exchange Inc.*