IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO MERCANTILE EXCHANGE INC., | ) ) ) ) ) | |
| | ) | Case No. 18-cv-01376 |
| Plaintiff, | ) ) ) | Hon. Matthew F. Kennelly |
| v. | ) ) ) | Magistrate Hon. M. David Weisman |
| ICE CLEAR US, INC.; AND ICE CLEAR EUROPE LIMITED, Defendants. | ) ) ) ) ) | |

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS REQUEST
FOR DISGORGEMENT TO BE TRIED TO A JURY**

The Seventh Amendment of the United States Constitution, the Supreme Court's decision in *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962) and the plain language of the Lanham Act support the proposition that CME, as a trademark infringement plaintiff, has a constitutional right to a trial by jury on an award of ICE's profits.[1] While there is no direct decision by the Seventh Circuit, this position is supported by other decisions in this Circuit, and this Court's prior decision in *Ariel Investments* is procedurally, factually and legally distinguishable. Some other Circuit courts have interpreted *Dairy Queen* differently, but those decisions conflict with Supreme Court precedent, are not binding on this Court and, thus are wrong as a matter of law.

---

[1] The Court has directed each side to file a submission regarding the right to a jury trial on the remedy of disgorgement in a trademark action. ECF No. 314. This issue generally arises after one party files a motion to strike the other party's jury demand, but ICE did not file any such motion here. Instead, ICE raised the issue in the Parties' Joint Status Reports after it lost its opposition to CME's Motion to Dismiss Intercontinental Exchange, Inc.

1

There is clear precedent supporting CME's right to a jury for disgorgement for its Lanham Act and common law trademark claims. Because the Seventh Amendment confers the right to a jury, ICE would suffer no harm or prejudice if the jury heard CME's claim for profits along with its claim for statutory damages, as the Lanham Act allows the Court (the Judge) to increase or decrease the jury's award as just. On the contrary, denying CME's jury right would deny CME a constitutional right, and the stakes are too high to deny CME this right and risk the need for a new trial after appeal. Thus, if any doubt remains as to CME's right to a jury, the doubt must be resolved in CME's favor.

Finally, even if the Court were to take a contrary (and unsupported) view of *Dairy Queen*, CME's disgorgement claim is coupled with a claim for statutory damages for trademark counterfeiting and there is no dispute that statutory damages are a legal remedy for the jury. Alternatively, the Court could allow the jury to render an advisory opinion and ICE would suffer no harm. Therefore, all claims for money should go to the jury and not be parsed out. While the Lanham Act provides the Court with the discretion to alter "the amount of the recovery" based on equitable considerations, it does not solely give the calculation of the amount of that recovery to the judge in the first instance.

For all of these reasons, the Court should find that CME's claim for disgorgement of profits should be submitted to the jury.

I. **ARGUMENT**

    A. **Disgorgement of Defendants' Profits Is a Legal Claim Entitling the Plaintiff to a Jury Trial.**

        1. **The Seventh Amendment Guarantees a Right to Trial by Jury for Claims at Common Law.**

The Seventh Amendment to the United States Constitution states "[i]n Suits at

common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." United States Constitution, Amendment VII. The Supreme Court has interpreted the Seventh Amendment to apply to cases that were analogous to "suits at common law" at the time the Constitution was drafted. *Tull v. United States*, 107 S.Ct. 1831, 1835 (1987); *Oxford Indus., Inc. v. Hartmarx Corp.*, No. 88 C 0322, 1990 WL 65792, at *3 (N.D. Ill. May 2, 1990). The Seventh Amendment analysis has two prongs: (1) compare the action to those brought in English Courts prior to the merger of the courts of equity and law, and (2) examine the remedy sought and determine whether it is equitable or legal in nature. *Oxford Indus., Inc.*, 1990 WL 65792 at *3. "The latter inquiry is more important than the former." *Black & Decker Corp. v. Positec USA Inc.*, 118 F.Supp.3d 1056, 1060, 1064 (N.D. Ill. 2015) (undertaking a detailed analysis on authority and rationale supporting the right to a jury for a demand for profits). Here, CME has asserted claims under both the Lanham Act and common law and asserted federal registrations and common law trademark rights. ECF No. 69.

### 2. The Supreme Court in *Dairy Queen* Held That a Claim for Disgorgement of Profits for Trademark Infringement is a Legal Claim.

Under the Supreme Court's precedent in *Dairy Queen, Inc. v. Wood*, 369 U.S. 469 (1962), a claim for disgorgement of profits under the Lanham Act is a legal claim. In *Dairy Queen*, a factually similar holdover licensee case, respondents licensed the DAIRY QUEEN mark to petitioner and later accused petitioner of breaching the agreement and of trademark infringement for using the mark after cancellation of the contract. *Id.* at 473–74. The complaint sought an "accounting" of Dairy Queen's profits, and the Court's opinion began with an analysis of whether this claim was legal or equitable in nature. The Court initially noted that the claim for an "accounting" could be construed

3

as a claim for contract damages or "a claim based solely upon the charge of infringement" or both. *Id.* at 477. Ultimately, the Court concluded that it did not matter:

> We find it unnecessary to resolve this ambiguity in the respondents' complaint because we think it plain that their claim for a money judgment is a claim wholly legal in its nature however the complaint is construed. As an action on a debt allegedly due under a contract, it would be difficult to conceive of an action of a more traditionally legal character. And as an action for damages based upon a charge of trademark infringement, it would be no less subject to cognizance by a court of law.
>
> *Id.* at 477.

The Court then explained that only in limited circumstances could a claim for profits be considered an equitable claim:

> The necessary prerequisite to the right to maintain a suit for an equitable accounting, like all other equitable remedies, is, as we pointed out in *Beacon Theatres*, the absence of an adequate remedy at law. Consequently, in order to maintain such a suit on a cause of action cognizable at law, as this one is, the plaintiff must be able to show that the 'accounts between the parties' are of such a 'complicated nature' that only a court of equity can satisfactorily unravel them. In view of the powers given to District Courts by Federal Rule of Civil Procedure 53(b) to appoint masters to assist the jury in those exceptional cases where the legal issues are too complicated for the jury adequately to handle alone, the burden of such a showing is considerably increased and it will indeed be a rare case in which it can be met. But be that as it may, this is certainly not such a case. A jury, under proper instructions from the court, could readily determine the recovery, if any, to be had here, whether the theory finally settled upon is that of breach of contract, that of trademark infringement, or any combination of the two. The legal remedy cannot be characterized as inadequate merely because the measure of damages may necessitate a look into petitioner's business records.
>
> *Id.* at 478–79.

On this basis, the Court held that the all of the claims in the case should go to the jury,

4

and there was no need for an equitable accounting. Justice Harlan's statement in the concurrence is consistent with this rationale:

> To render [an accounting for alleged trademark infringement] truly 'equitable' it must appear that the substantive claim is one cognizable only in equity or that the 'accounts between the parties' are of such a 'complicated nature' that they can be satisfactorily unraveled only by a court of equity. … A jury, under proper instructions from the court, could readily calculate the damages flowing from this alleged trademark infringement, just as courts of law often do in copyright and patent cases.

*Id.* at 480.

Accordingly, for purposes of determining a right to trial by jury, an accounting of profits for trademark infringement is presumed to be a legal claim for damages. *See also* 9 Fed. Prac. & Proc. Civ. § 2310 (Wright & Miller) (discussing *Dairy Queen* and noting the Court's holding "that the demand for a money judgment, regardless of how it was labeled, raised legal issues on which there was a right to jury trial, particularly in view of procedural reforms that made equitable accounting obsolete"); Gary M. Ropski, "The Federal Right to a Jury Trial—Awakening of a Dormant Constitutional Right", 70 Trademark Rep. 177, 187–89 (1980) (noting that an "accounting for damages" creates a right to a jury trial under *Dairy Queen* absent extraordinarily complex facts).

In fact, in one more-recent decision the Supreme Court clearly underscored its holding in *Dairy Queen*. Specifically, in *Feltner v. Columbia Pictures Television, Inc.*, 523 US 340 (1998), in which the Court considered whether claims for statutory damages under the Copyright Act should go to a jury, the Court noted "awards of actual damages *and profits … generally are thought to constitute legal relief. See Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 477, 82 S.Ct. 894, 899, 8 L.Ed.2d 44 (1962) (action for damages for trademark infringement "subject to cognizance by a court of law")." *Id.* at 346

5

(emphasis added).

Like *Dairy Queen*, the present case also involves a holdover licensee (ICE) and a claim by the plaintiff (CME) for an accounting of ICE's profits. Therefore, the Supreme Court's decision confers upon CME the right to a jury and no further analysis is required. To hold otherwise would adopt the mistaken belief that juries cannot handle complex issues—a theory that does not hold water in this day and age as juries regularly hear complex patent infringement or other technical cases. Here, each side has hired experts who can clearly explain to the jury the basis for their profits assessments, so there is nothing extraordinarily complex that would prevent having the issue heard by a jury. For all of these reasons, the Court should follow the *Dairy Queen* precedent and send the claim for disgorgement of profits to the jury.

### 3. The Plain Language of the Lanham Act Also Contemplates an Assessment of Defendants' Profits by the Jury.

The Lanham Act clearly contemplates the jury deciding the amount of all monetary awards (damages or profits), at least in the first instance, with a subsequent review of the jury's decision by the Court based on "principles of equity." Section 35 of the Lanham Act begins:

> When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office … shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled … subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.

15 U.S.C. 1117(a).

The "subject to the principles of equity" language is meant to modify *each* of the subsequent types of damages, i.e., profits, damages and costs. It is not a limitation requiring all of the claims to be tried to a court of "equity" (i.e., the judge). Any contrary

6

interpretation would be non-sensical as it would require a claim for damages to be tried to the judge.[2]

Critically, Section 35 also makes it clear that the judge's consideration of profits starts with considering an "amount of recovery" which has already been determined. Section 35 states: "If the court shall find that *the amount of the recovery* based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id.* (emphasis added). This "amount of the recovery" language contemplates that there must first be a separate finding by the jury of "the amount of the recovery based on profits" before there is any consideration by the court. If the drafters had intended to limit the entire consideration of profits to the court it would have said something different, for example: "If the court shall find that defendant's profits attributable to the infringement are inadequate or excessive, the court may in its discretion enter judgment for such sum as it shall find to be just, according to the circumstances of the case." By starting with the "amount of recovery," the Act contemplates a finding by the jury prior to the Court exercising its equitable discretion.

### 4. Other Courts in This Circuit Have Properly Held that Disgorgement is a Question for the Jury.

A number of courts in this Circuit have correctly held that disgorgement of the infringer's profits is an issue for the jury. In *Oxford Indus., Inc.,* the plaintiff filed a declaratory judgment action seeking a declaration that its use of defendant's trademark

---

[2] Importantly, the phrase "principles of equity" can be applied to an award of "damages sustained by the plaintiff." In fact, the Act makes that clear when it allows for the Court to treble the amount of actual damages "according to the circumstances of the case." Lanham Act Section 35, 15 U.S.C. 1117(a). Similarly, the Court can alter an award of profits "in its discretion." *Id.*

7

was non-infringing, and defendant counterclaimed for infringement seeking an injunction, damages and profits. 1990 WL 65792 at *7. The court concluded that "a claim for a trademark infringer's profits is more analogous to a suit for damages than one for restitution." *Id*. It considered historical practices in trademark cases and found that: "Historically, an action for trademark infringement was an action at law for damages, being viewed as a kind of fraud; only later—after the adoption of the Seventh Amendment—did courts of equity grant injunctions against such misconduct." *Id*. at 8. Because equity provided complete relief, including injunctive relief, trademark infringement suits were then typically brought in equity. As the Court stated: "[I]t appears reasonably clear that while an accounting for profits was an accepted equitable remedy [in trademark cases], one could not seek an accounting for profits in a court of equity without seeking an injunction or presenting other grounds … for invoking the equitable jurisdiction of the court." *Id*. at *6. Based in part on this analysis, the court concluded: "As a practical matter, an award of profits is really a surrogate for damages." *Id.* at 7.[3]

This makes sense because the whole purpose for the Lanham Act's disgorgement remedy is to allow trademark owners to recover damages despite the practical reality that actual damages in such cases are difficult to prove. *Id.* That is, Congress specifically intended for the disgorgement of profits to serve as a proxy for actual damages of trademark owners. *Id.* ("Congress recognized the difficulty of computing appropriate compensation for trademark infringement, and directed the court to combine damages

---

[3] The court also noted that rationales for disgorgement also include compensation and deterrence and not the typical restitution claims which fall in equity: "A court of equity may require the infringer to pay over his profits because he should not be allowed to profit from his own wrong *or* because the actual loss to the trademark owner is impossible to compute, but this is arguably more in the nature of compensatory damages than restoring the trademark owner's property to him, which is normally understood by restitution." *Oxford Indus., Inc.,*1990 WL 65792 at *7.

8

*and* profits to achieve a just result").[4] Thus, disgorgement of profits under the Lanham Act is far more analogous to a remedy in law than a remedy in equity. Further, a bedrock principle of the courts of equity was that equitable relief was only available where legal remedies were demonstrated to be inadequate. *Beacon Theatres, Inc. v. Westover,* 79 S.Ct. 948, 953, 956 (1959).

In *Black & Decker Corp. v. Positec USA Inc.*, 118 F.Supp.3d 1056, 1061–62 (N.D. Ill. 2015), Judge Dow carefully considered the question of disgorgement and found that it was a question for the jury. The court considered that an accounting may be based on three rationales: (1) unjust enrichment, (2) deterrence, and (3) compensation. *Id.* at 1061 (citing *Roulo v. Russ Berrie & Co.,* 886 F.2d 931, 941 (7th Cir.1989)). Although the court notes that the parties were in a directly competitive market with products sold side-by-side, this does not seem to control its decision that disgorgement is a question for the jury. Instead, the court found there are three lines of cases and "the weight of the authority supports the first or second view [that there is a right to a jury] more than the third [finding there is no right to a jury]." *Id.* at 1063.

Finally, in *Grove Fresh Distributors, Inc. v. New England Apple Prod. Co.*, No. 89 C 1115, 1991 WL 3928, at *3 (N.D. Ill. Jan. 11, 1991), the court found that *Dairy Queen* generally held that "a jury 'under proper instructions' can determine the amount of recovery," so "an accounting is a legal claim for damages." *Id.* at *3. Thus, a number of judges in this Circuit who have carefully considered this issue have supported sending disgorgement claims to a jury.

---

[4] The Court further because "profits were combined with damages in Section 1117 into a single monetary recovery which constitutes "compensation", rather than included in Section 1116, the section authorizing injunctions, suggests that Congress considered an award of profits more in the nature of damages than as incidental to equitable relief." *Id.* at *7.

9

### 5. The Court's Prior Decision in *Ariel Investments* is Procedurally, Factually and Legally Distinguishable.

This Court's prior decision in *Ariel Investments* is procedurally, factually and legally different from the present case. See *Ariel Investments, LLC v. Ariel Capital Advisors, LLC*, No. 15-cv-3717, 2017 WL 1049464, *2 (N.D. Ill. Mar. 20, 2017). The procedural posture of the case is helpful to recount. Plaintiff Ariel Investments filed a Written Waiver of Jury Demand and a Motion to Strike the Jury Demand by Defendant Ariel Capital. ECF Nos. 171 & 172. Plaintiff argued that the sole relief it sought was disgorgement of profits and injunctive relief and no other forms of relief were sought. Plaintiff discounted the Supreme Court's *Dairy Queen* decision by instead relying upon a Ninth Circuit decision and noted there is no clear decision from the Seventh Circuit. ECF No. 172 at 4–5. In its opposition, Defendant Ariel Capital primarily argued that it would suffer significant prejudice by Plaintiff's late withdrawal right before trial was set to begin and that plaintiff's contradictory statements that it was seeking damages and profits supported the view that there was a legal issue implicating the right to a jury. ECF No. 180 at 1–3 & 5. Neither plaintiff nor defendant properly analyzed the precedent in *Dairy Queen* or the plain language of the Lanham Act, depriving the Court of key support.

The instant case is also distinguishable because, unlike in *Ariel*, CME did not waive its jury demand; instead, ICE is objecting to CME's jury demand. Thus, ICE is trying to deprive CME of its constitutional right to a jury trial on this issue, which is very different from what occurred in *Ariel Investments*. On that basis alone, CME asserts that this Court's decision in *Ariel Investments* is not binding, and CME can maintain the right to a jury trial on disgorgement of ICE's profits.[5]

---

[5] In deciding *Ariel Investments*, this Court relied upon the Supreme Court's decision in *Chauffeurs*;

If the Court still concludes that disgorgement of profits is solely an equitable issue and not a legal issue, then the Court must consider CME's additional claims of counterfeiting and counterfeiting statutory damages and breach of contract, which are legal issues proper for resolution by a jury. As described below, the presence of these additional claims and forms of relief were not at issue in *Ariel*, and they support CME's right to a jury trial on disgorgement of profits because it is most efficient and proper for the jury to hear all evidence to award ICE's profits and statutory damages. The jury award does not strip this Court of its power under the Lanham Act to increase or decrease an award of ICE's profits based on equity.

### B. There Is No Prejudice or Harm to ICE In Trying the Profits Claims to the Jury, and Any Doubt Must be Resolved in CME's Favor

The ICE defendants cannot point to any actual prejudice or harm they will suffer if CME is allowed to present its claim for disgorgement to a jury. The jury award does not strip this Court of its power under the Lanham Act to increase or decrease an award of ICE's profits based on equity. Nor does a trial by jury prevent the ICE defendants from filing any post-trial motions if they believe the jury award was not supported by the evidence. To the contrary, by denying CME's jury trial demand, CME is potentially denied its constitutional right resulting in harm and prejudice that may later require a new trial. In doing so, the Court unnecessarily creates an issue for appeal.

Any doubt about whether the disgorgement claim should be tried to a jury must be resolved in CME's favor. "[T]he risk of error is greater when denying rather than

---

however, Chauffeurs was a breach of collective bargaining agreement under the Labor Management Relations Act case and not a trademark infringement action (similar to *Dairy Queen*). And, as detailed below, the award of profits in a trademark case is not solely restitutionary, but involves legal issues such as compensation.

11

recognizing a constitutional right" and "any doubts should be resolved in favor of finding a constitutional jury right, as the 'federal policy favoring jury trials is historic and continuing strength.'" *Black & Decker*, 118 F.Supp.2d at 1064 (citing *Simler v.* Conner, 372 U.S. 221, 222 (1963) (which cites other cases including *Dairy Queen*)). If the Court believes the Supreme Court's decision in *Dairy Queen* and the decisions in other opinion identified herein are ambiguous, then any doubt should be resolved in favor of CME's constitutional right to a jury trial.

    **C.    The Opinions of Other Circuit Courts are Distinguishable and Not Precedential.**

While other Circuits have held that no right to a jury exists on a claim for disgorgement, these decisions improperly ignored Supreme Court precedent, are factually distinct from the present case, and, regardless, are not binding on this Court.

First, the decisions of other Circuits ignore the Supreme Court's ruling in *Dairy Queen* or take the position that the Supreme Court held in *Feltner* that *Dairy Queen* is limited to a legal claim for damages and not profits. *See Fifty-Six Hope Road Music Ltd. v. A.V.E.L.A., Inc. et al.*, 778 F.3d 1059, 1074–77 (9th. Cir. 2019) (citing *Feltner v. Columbia Pictures Television, Inc.*, 523 US 340, 346 (1998)). As explained above, the opposite is true. *Feltner* underscores that that trademark profits are legal in nature. *Feltner*, 523 US at 346.

Second, these decisions involve situations in which the sole claim for relief on the trademark infringement claim was an injunction and defendant's profits (putting aside claims for attorneys' fees and costs). The jury did not need to decide other forms of relief, such as statutory damages for a counterfeiting claim. This is a significant difference. For example, in *Hardy Candy LLC, v. Anastasia Beverly Hills, Inc.*, 921 F.3d 1343, 1352–54

(11th Cir. 2019), the Eleventh Circuit affirmed the denial of a right to a jury trial because plaintiff abandoned its claim for legal relief, but CME maintains its claim for statutory damages.[6]

Third, these cases are also distinguishable to the present case because ICE has argued a number of times that any disgorgement award or remedy must be "equitable *and compensatory*."[7] ECF No. 239 at 1 & 3; ECF No. 248 at 14 (emphasis added). The decisions of other Circuit that refused to submit disgorgement to a jury do not appear to be concerned with balancing issues of compensation, unjust enrichment and deterrence. As compensation is a legal issue, and a factor that was not considered by the other Circuits, this further supports a contrary holding that is inconsistent with Seventh Circuit case law. Therefore, it would be improper to deny CME its right to a jury on disgorgement when as part of that award, the jury is tasked to consider legal issues.[8]

### D. Alternatively, The Profits Claims Should be Submitted to the Jury Because the Claims for Statutory Damages for Counterfeiting Will be Submitted to the Jury Absent a Waiver by CME.

Even if the Court were to find, contrary to Supreme Court precedent, that the claim for disgorgement of profits is clearly equitable and there is no right to a jury, a jury is still warranted due to CME's co-pending claims for statutory damages under the

---

[6] In one decision noted frequently, including by this Court in *Ariel Investments*, the Sixth Circuit quickly dispensed with the issue regarding a right to jury for disgorgement by finding that "[b]ecause the bankruptcy court permitted Ferrari to seek only equitable relief, Roberts was not entitled to a jury trial" without any citation or support. *Ferrari S.P.A. v. Roberts*, 944 F.2d 1235,1248 (6th Cir. 1991).
[7] At trial, ICE will seek to introduce evidence that is heavily focused on the compensatory rationale for disgorgement of profits – further admitting that the issue is legal and not solely equitable, thus entitling CME to the right of a jury.
[8] Of note, a concurring opinion in the Ninth Circuit's recent decision in *JL Beverage Co. v. Jim Beam Brands Co.*, No. 18-CV-16597, 2020 WL 2765083 *2–3 (9th Cir. May 27, 2020) highlights a conflict in the Ninth Circuit regarding disgorgement of profits in trademark cases (holding no right to a jury) and copyright cases (holding there is a right to a jury under *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corp.*, 562 F.2d 1157 (9th Cir. 1977), *overruled on other grounds by Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020).

13

counterfeiting provisions of the Act. When multiple damages claims are pending in the same suit relating to the same issue they should all be submitted to the jury for consideration regardless of whether some are labeled legal and some equitable. In this case, in addition to its claims for disgorgement for trademark infringement, CME also has claims pending for counterfeiting which it may elect to submit to the jury. Specifically, CME has preserved its ability to seek statutory damages for its counterfeiting claims. ECF 250 at ¶ 2. In a case where a plaintiff has both legal and equitable claims, the Plaintiff should be allowed try both to a jury. *Dairy Queen*, 369 U.S. at 472–73 (reaffirming that "where both legal and equitable issues are presented in a single case" a Seventh Amendment jury right exists).

In this case, if disgorgement were considered a purely equitable remedy, there are common issues between the claims related to trademark infringement and those relating to counterfeiting. Further, a claim for an accounting of counterfeiting statutory damages is a legal claim to which the plaintiff is entitled to a trial by jury. The Supreme Court made this clear in *Feltner*, 523 U.S. at 353, holding that there is a Seventh Amendment right to have a jury determine the amount of statutory damages for copyright infringement. *See Klipsch Group, Inc. v. Big Box Store Ltd.*, No. 12 Civ. 6283, 2012 WL 5265727, at *5 (S.D.N.Y. 2012) ("The Supreme Court's decision in *Feltner v. Columbia* requires the conclusion that statutory damages under the Lanham Act are a legal remedy.")

Because CME is entitled to a jury trial on its claims for statutory damages for counterfeiting, it should also be allowed to try its co-pending claim for ICE's profits to the jury for at least an advisory opinion on an award of profits. While the Court has discretion

to modify "the amount of the recovery based on profits," it cannot deny CME a jury trial on its co-pending claims in the first instance.

## II. CONCLUSION

For all of the reasons stated above, the Court should grant CME's request to have its claim for disgorgement of profits tried to the jury. As such, CME is ready to proceed with a jury trial on these issues on August 31, 2020.

          Respectfully submitted,

Dated:  August 9, 2020    By:   /s/ Matthew D. Witsman
    Joseph V. Norvell (Reg. No. 6225747)
    Joseph T. Kucala, Jr. (Reg. No. 6275312)
    Tom M. Monagan (Reg. No. 6278060)
    Matthew D. Witsman (Reg. No. 6327790)
    Andrea J. Calvert (Reg. No. 6329507)
    NORVELL IP LLC
    333 South Wabash, Suite 2700
    Chicago, Illinois 60604
    Telephone:  (888) 315-0732
    Facsimile:  (312) 268-5063
    courts@norvellip.com

Of counsel:

Matthew J. Kelly (Reg. No. 6270056)
CHICAGO MERCANTILE EXCHANGE INC.
20 S. Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 930-3046
Matthew.kelly@cmegroup.com

*Attorneys for Plaintiff*
*Chicago Mercantile Exchange Inc.*

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the foregoing PLAINTIFF'S BRIEF IN SUPPORT OF ITS REQUEST FOR DISGORGEMENT TO BE TRIED TO A JURY was electronically filed on August 9, 2020, and served upon Defendants ICE Clear US, Inc. and ICE Clear Europe Limited via the Court's electronic filing system and via electronic mail to:

      Gina L. Durham
      Michael Geller
      DLA Piper LLP (US)
      444 West Lake Street, Suite 900
      Chicago, IL 60606-0089
      gina.durham@dlapiper.com
      Michael.geller@dlapiper.com

      Marc E Miller
      DLA Piper, LLP US
      1251 Avenue of the Americas
      24th Floor
      New York, New York 10020
      Marc.Miller@dlapiper.com

      Paul A. Taufer
      Michael Burns IV
      DLA Piper, LLP US
      One Liberty Place, 1650 Market Street
      Suite 4900
      Philadelphia, PA 19103
      paul.taufer@dlapiper.com
      michael.burns@dlapiper.com

Dated:  August 9, 2020        By:   /s/Matthew D. Witsman