1

```
             IN THE UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
                       EASTERN DIVISION

CHICAGO MERCANTILE EXCHANGE INC.,     )  Docket No. 18 C 1376
                                      )
                Plaintiff,            )
                                      )
          vs.                         )
                                      )
ICE CLEAR US, INC., et al.,           )  Chicago, Illinois
                                      )  August 10, 2020
                Defendants.           )  9:55 o'clock a.m.


             TRANSCRIPT OF PROCEEDINGS - MOTION
          BEFORE THE HONORABLE MATTHEW F. KENNELLY


APPEARANCES:

For the Plaintiff:    NORVELL IP
                      BY:  MR. JOSEPH THOMAS KUCALA, JR.
                      333 South Wabash Avenue, Suite 2700
                      Chicago, IL  60604
                      (773) 321-0237


                      NORVELL IP LLC
                      BY:  MR. JOSEPH V. NORVELL
                           MR. THOMAS M. MONAGAN, III
                      1776 Ash Street
                      Northfield, IL 60093
                      (847)809-2212


                      CME GROUP INC.
                      BY:  MR. MATTHEW JOSEPH KELLY
                           MR. GREG SKONY
                      20 South Wacker Drive
                      Chicago, IL  60606
                      (312) 930-1000


Court Reporter:       MS. CAROLYN R. COX, CSR, RPR, CRR, FCRR
                      Official Court Reporter
                      219 S. Dearborn Street, Suite 2102
                      Chicago, Illinois  60604
                      (312) 435-5639
```

```
 1   For the Defendants:    DLA PIPER LLP (US)
                            BY:  MS. GINA L. DURHAM
 2                          555 Mission Street, Suite 2400
                            San Francisco, CA 94105
 3                          (415) 836-2506

 4
                            DLA PIPER LLP US
 5                          BY:  MR. PAUL ALBERT TAUFER
                            One Liberty Place
 6                          1650 Market Street, Suite 4900
                            Philadelphia, PA  19103
 7                          (215) 656-3300

 8

 9                          DLA PIPER LLP (US)
                            BY:  MS. MELISSA A. REINCKENS
10                          401 B Street, Suite 1700
                            San Diego, CA 92101-4297
11                          (619) 699-2798

12
                            DLA PIPER LLP (US)
13                          BY:  MR. JOSHUA SCHWARTZMAN
                            1251 Avenue of the Americas
14                          New York, NY 10020
                            212-335-4671
15

16

17

18

19

20

21

22

23

24

25
```

1   (The following proceedings were had telephonically:)
2   THE CLERK: Case 18 C 1376, Chicago Mercantile
3   Exchange v. ICE Clear.
4   THE COURT: Can the lawyer for the plaintiff
5   please -- lawyer or -- well, let's do it this way. Can a
6   lawyer for the plaintiff give the names of everyone on the
7   phone.
8   MR. KUCALA: Sure, your Honor. This is Joe Kucala on
9   behalf of CME, along with Joe Norvell and Tom Monagan from
10  Norvell IP, and Matthew Kelly and Greg Skony from CME.
11  THE COURT: Okay. And somebody give the names of
12  everybody who is on for the defendant.
13  MS. DURHAM: Yes, good morning, your Honor. This is
14  Gina Durham on behalf of ICE from DLA. I have with me Paul
15  Taufer, Josh Schwartzman, and Melissa Reinckens, and we also
16  have Andy Richman from ICE.
17  THE COURT: Okay. Hang on one second.
18  So when we spoke last week, I think it was Friday, I
19  was advised that -- by the plaintiff that if it concluded that
20  CME was not entitled to a jury trial and disgorgement, then
21  this would be a bench trial across the board. So is that
22  still the case?
23  MR. KUCALA: Your Honor, this is Joe Kucala on behalf
24  of plaintiff. Yes, your Honor. That is the case. I'll be
25  honest, it was our understanding that we'd still be proceeding

1  with the August 31st bench trial that was set back in March --
2              THE COURT:  Hang on a second.  Stop for a second.  So
3  I don't know if it's a bad connection or what.  Maybe it's
4  just that you're on a speakerphone or something.  Maybe partly
5  you're talking really fast.  So can you slow it down?  I
6  didn't catch about half of that.
7              MR. KUCALA:  Is this better, your Honor?
8              THE COURT:  Oh, way better.  Thanks.
9              MR. KUCALA:  Okay.  Sorry about that.  Yes, your
10 Honor.  This is Joe Kucala on behalf of CME.  So when we spoke
11 on Friday, it was CME's understanding that, you know, a bench
12 trial would still be proceeding on August 31st, which was the
13 date set back in March and hasn't been reset, and we don't see
14 any reason to delay proceeding --
15             THE COURT:  Okay.
16             MR. KUCALA:  -- on August 31st.  Other than -- other
17 than that.
18             THE COURT:  Yeah, but the more specific question,
19 though, is that, I mean, the remaining claims or requests for
20 relief on which there is indisputably a right to a jury trial,
21 you're foregoing a jury trial on those, correct?
22             MR. KUCALA:  Correct, your Honor.
23             THE COURT:  Okay.  And the defendant has already
24 advised me that you're foregoing, waiving, whatever you want
25 to call it, a jury trial on the breach of contract

1 counterclaim, right?

2 MS. DURHAM: That is correct, your Honor.

3 THE COURT: Okay. So this is what we're doing. We're going ahead on August 31st, and it's all going to be by video. Here's why.

So first of all, it's going to go ahead on August 31st because that is the date that I set back in March. There is no reason to delay it, particularly if it's going to be by video. The primary objections have been made to the data from the defendant, and they have to do with travel issues, which are now off the table.

The reason it's going to be all by video is really two things. Number one in this order of importance, we've done a couple of jury trials now. I did a civil jury trial last week. They went fine. But the fact of the matter is is that we are potentially putting jurors at risk for their health coming downtown from the coronavirus.

And secondly, we have these recurring issues like we had this morning where I found out at I think it was 4:41 this morning that the courthouse was going to be shut down because of unrest that had taken place in the downtown area last night and some expectation that it might continue. And this is now the either third or fourth day that's happened since June. The others were, to be fair, all clumped in June.

But we're subject to those kinds of things happening,

1  which, you know, in the entire time that I have been working
2  in that courthouse, which has been off and on since 1982, '81,
3  I guess, it's really not happened before.  It would be
4  extraordinarily disruptive if we had people in here from out
5  of town or, quite honestly, people in here from in town
6  because what happened this morning is that a lot of people
7  were on their way downtown and found out as they got there,
8  oops, you can't get off the expressway, or, oops, the bridges
9  are up so you can't get into the loop.
10             So that's the first thing.  It's a safety issue both
11 from the standpoint of coronavirus and then there's a
12 logistics issue relating to the courthouse.
13             And secondly, I don't say this to minimize the nature
14 of the dispute at all because it's an important case to both
15 sides; it's -- well, let's put it this way.  I think it's fair
16 to both sides if everybody's witnesses, assuming it's a bench
17 trial, all appear in the same way.  So that's the way we're
18 going to do it.
19             What this is going to require is it's going to
20 require us to do some dry runs, or at least one.  So I've got
21 your list of, you know, who the witnesses are and where
22 they're going to be appearing from.
23             The rule is going to be -- and this would be the
24 exact same rule if this was a jury trial or if it was a bench
25 trial appearing -- or proceeding live or if it's a bench trial

1  by video conference -- that each witness is going to appear
2  one time.  So if somebody, let's say, is called by the
3  plaintiff adversely, all the questioning by the defendant,
4  whether it's within the scope of cross or not, is going to be
5  done all at once, and we're going to get that witness
6  completely done before we go on to the next witness, the only
7  exception to that being if there's something that comes up
8  later in the case that you didn't anticipate and you need to
9  bring somebody back on to answer that, that would be an
10 exception.
11          I can't think of any other exceptions, and that one
12 would be pretty rare in a civil case where people are able to
13 anticipate the issues in advance and know what they are from
14 the pretrial order and the discussions surrounding that.
15          So that's the first thing.
16          The second thing is is that on any deposition
17 testimony, I'm going to want it all in advance.  So I should
18 know, but I haven't committed the status reports to memory, is
19 all of the deposition testimony that's going to be offered in
20 lieu of live testimony -- I'm not talking about a deposition
21 you might use to cross a witness or something like that; I'm
22 talking about the witnesses who are appearing by deposition --
23 is all of that live, or is some of that paper depositions?
24          MR. KUCALA:  Your Honor, this is Joe Kucala.  We have
25 both written transcripts and video for all the witnesses.

1    THE COURT: Both. Okay.

2    But, I mean, are there some where there's just a
3 written transcript and no video?

4    MR. KUCALA: Not that I'm aware of, no. Not that I'm
5 aware of.

6    THE COURT: Okay. All right.

7    MS. DURHAM: No.

8    THE COURT: Ms. Durham, does that sound right to you?

9    MS. DURHAM: That does sound right, your Honor.

10    THE COURT: Okay. So what I'm going to want, and you
11 can do this in the designation process, I'm going to want all
12 that stuff -- I'm going to want the hard copies plus, I guess,
13 the thumb drives with the video on it in advance of the trial.
14 I'll probably just look at the video, but I want to have the
15 hard copy as a backup.

16    When you give me -- when I say "hard copy," you're
17 not actually going to be delivering everything. It's going to
18 be all, you know, provided in pdfs. The two things I would
19 say about that is it's okay to do the four to a page. That's
20 just fine; and just make sure it's one of these little things
21 that people don't always realize.

22    I'll give you a 20-second lesson about Adobe Acrobat
23 that you probably already know, but when you save something as
24 a pdf, the default in Adobe Acrobat is it saves it so it can
25 be read in every version of Adobe Acrobat that's ever been

1 invented going back to 1.0. What that means is the file ends
2 up being really huge. So save it as -- you'll see a thing in
3 the menu that says, Save as other. Click on that, and it will
4 give you an option to save it as Acrobat 9.0 or greater. Do
5 that. And that makes the file much smaller.
6 My guess is you're going to need to be sending me
7 thumb drives because the files are probably going to be too
8 big to email. They'll get kicked out by our spam filter.
9 So that's on depositions.
10 On -- you should definitely expect that there's going
11 to be opening statements at the beginning and closing
12 arguments at the end rather than written submissions. Don't
13 assume that there's going to be trial briefs. Assume that
14 there won't be. I might change that in a game-time decision
15 depending upon how things go, but assume that there's not
16 going to be trial briefs and you're going to be doing openings
17 and closings.
18 In terms of the dry run, we don't use Zoom. I won't
19 give you the long version of that. It's just it is what it
20 is. And so there's going to be a limitation on the number of
21 people who can be on video at any one time. I'm pretty sure
22 that I'm going to be limiting it to the witness, the lawyers
23 questioning the witness, and the court reporter is going to
24 have to be on video. I might broaden that to two lawyers per
25 witness, but don't assume that. Obviously, it doesn't have to

Case: 1:18-cv-01376 Document #: 420 Filed: 07/02/21 Page 10 of 19 PageID #:19301

10

1  be the same lawyer for every person. Of course not.

2  And other people will be able to -- on the platform
3  we're using, other people will certainly be able to listen in
4  by a phone connection. Less clear whether they'll be able to
5  observe. That's something we'll work out in our dry run.

6  My intention is to sit on the bench in the courtroom
7  and run it through my courtroom desktop, which I also will
8  project onto the courtroom evidence presentation system. So
9  it will be a public trial to that extent that anybody wants to
10 watch it, can come sit in the courtroom and watch and hear
11 everything that's presented by way of argument and testimony.

12 And that can also be true for anybody that -- you
13 know, who is associated with either side that wants to watch
14 everything and, you know, can't necessarily, you know, maybe
15 gets kicked out from a numbers standpoint and can't join in on
16 the video.

17 And then the last thing I would say is that one of
18 the things that I suspect that you, like I have learned in the
19 last four months, is that a lot of people's home Internet
20 connection stinks. So my advice to anybody who is going to be
21 questioning or testifying is tell them it's time to call their
22 ISP and upgrade a little bit, pay the extra 10 bucks a month,
23 or make sure that they're going -- I mean, I have had a couple
24 of evidentiary proceedings where people have gone to like a
25 lawyer's office or something like that. Just make sure there

1  is a good connection there.
2      And then I'd like to set up a date maybe next week
3  sometime -- yeah, next week sometime where we're going to do
4  some testing. My proposal would be Monday. No. Yeah, Monday
5  afternoon of next week. That's the 17th. So maybe something
6  like 2:00 in the afternoon.
7      I think the idea would be let's have -- I'll send out
8  a video invite in advance for the platform we'll be using. I
9  think the idea would be to have, you know -- to have, let's
10 say, a couple people on the, let's say -- let's just do the
11 numbers game here.
12     The platform we're going to be using is something
13 called Microsoft Teams. So if you have -- if you've
14 downloaded the app for Teams and you have either a laptop or a
15 desktop, you can see nine people, including yourself. I can't
16 see more than that. It's just a flaw in the -- it's just a --
17 I can see everybody but not all at once.
18     I think the idea would be we have three people
19 participating in this test from each side, two of whom are
20 going to play lawyer, and one of whom is going to play
21 witness. Because one of the things we're going to want to do
22 is just kind of walk through dealing with exhibits.
23     So, you know, screen sharing is an option for use of
24 exhibits but frankly not a terrific one because on most of
25 these things when somebody shares their screen, that's all you

1  see and you don't see the witness anymore.  You don't see the
2  person who is talking anymore.
3  　　　　So I think the better option for that is that -- and
4  this is -- you know, it's a little bit more cumbersome, it's
5  just part of the facts, facts on the ground, so to speak -- is
6  that you're going to have to have -- if you're going to use
7  exhibits with a witness, even if it's the person's deposition,
8  they're going to have to have hard copies in their hand at the
9  time they start to testify.  It doesn't mean you have to give
10 it to them a week advance, it doesn't mean you have to give it
11 to them even four days or three days or two days in advance,
12 but they have to have them in their hands when they are
13 testifying.
14 　　　　And this is going to be easy for the party that's
15 affiliated with the witness.  It's going to be harder for the
16 other party, A, because you don't want to do it because you're
17 lawyer and you don't want to give up your -- what you're going
18 to go through.  Too bad is my answer to that.
19 　　　　And secondly, it's just -- you're going to have to
20 get stuff to people in advance and have it organized in a way
21 that they can find it easy.  That doesn't mean you have to put
22 it in the sequence in which you're going to question about it,
23 but you're going to need to be giving people probably some
24 kind of a binder that has stuff tabbed in it instead of old
25 school that way.

1  I would urge against trying to do it all
2 electronically because part of what we're trying to guard
3 against here is what happens if the electronics aren't working
4 properly.
5  That's pretty much all the stuff that I can think of
6 to talk about today before we do a dry run.
7  So I am going to turn it over for questions. First
8 to plaintiff.
9  MR. KUCALA: Thanks, your Honor. This is Joe Kucala.
10 Do you think -- you're going to do an invite on Monday
11 afternoon, so that would be fine on a dry run.
12  Have you used this platform before?
13  THE COURT: Yeah, I've used it for a bunch of stuff.
14  MR. KUCALA: Okay. And are there any
15 particular resources that we should --
16  THE COURT: We've used it for a bunch of stuff.
17  No, it's actually pretty intuitive. The one thing I
18 would advise is download the app. So you can get it -- so
19 you'll get an invite from me. You can just click on that, and
20 it goes into a web version of it, though on the web version of
21 it, you don't have as much versatility as to how many people
22 you can see on the screen at once.
23  So I would download the app. And it's not some sort
24 of a -- you know, a North Korean application or anything like
25 that that's going to steal all of your secrets or anything.

1 It's Microsoft, so it's --

2 MR. KUCALA: Yeah, we definitely have used Teams in
3 some other straightforward video conference situations like
4 that. So I was just wondering if --

5 THE COURT: Yeah, we have another one that we use --
6 we've had another one that we use, which is a Cisco program,
7 but in my -- I've used both of them a lot, and I think this
8 one is a little bit better.

9 MR. KUCALA: Okay. And then just in the context of a
10 bench trial, are there other issues or ways to present
11 information that would be helpful to you? I know you said no
12 trial briefs or something like that, but the parties are
13 thinking about doing stipulations of fact that we'll include
14 in the pretrial order. I'm just wondering if there's any
15 other --

16 THE COURT: Yeah, that would be great. That would be
17 great. I mean, I will -- I mean, my supposition is that, you
18 know, you're going to be using slides in your opening and
19 closing, and, again, this is going to be harder to do by
20 video.

21 I mean, you can do it. I mean, you could share your
22 screen, and I could just listen to you and look at your
23 slides, but -- you know, maybe some people prefer that. I
24 don't know. Don't look at me, look at my slides.

25 But you're probably going to want to give me, you

1  know, the deck in advance. And it doesn't have to be way in
2  advance. I just have to have it in my hands beforehand.
3        Now, giving stuff to me is just going to be doing it
4  all electronically. What I said before about getting the hard
5  copies in the witnesses' hands, that's really about the
6  witnesses.
7        MR. KUCALA: Okay. Is there any objection to at
8  least the lawyers and maybe one of the clients all operating
9  from a single conference room that has cameras and video and
10 audio?
11       THE COURT: How much social distancing you do is up
12 to you. I can control it when it's in the courtroom. I am
13 not going to try when it's not.
14       MR. KUCALA: Understood.
15       THE COURT: So the one issue, though, that I will
16 tell you that sometimes happens on video conferencing
17 platforms is if -- so I had one once. I did a preliminary
18 injunction hearing back in April in a case involving a Cook
19 County jail, and there was one side who was set up in a
20 conference room and had me on a speakerphone as opposed to
21 listening to it through the computer, and we got some pretty
22 God-awful feedback.
23       Now, usually the remedy for that is you just tell
24 everybody in advance mute yourself and only unmute yourself
25 when you're talking.

1 One of the downsides of this particular platform and
2 the other ones that we've used at the court is that I can't
3 unmute somebody, so they got to kind of do it themselves.
4 So that's the only issue that occurs to me off the
5 top of my head with, you know, multiple people in one room.
6 MR. KUCALA: Understood.
7 I think that's it from me. Thank you, your Honor.
8 THE COURT: Okay. Any questions or points on the
9 defense side?
10 MS. DURHAM: Yes, your Honor. And we appreciate the
11 dry run being scheduled for next week. But I'm just
12 wondering, if we feel like we need sort of additional dry runs
13 or getting comfortable with the system, will that be possible?
14 THE COURT: Yeah. That's why I'm doing this next
15 week and not the week before the trial.
16 MS. DURHAM: Okay. Thank you, your Honor.
17 THE COURT: Figure out if there's bugs. If there's
18 bugs, we'll get them sorted out.
19 MS. DURHAM: Okay. And I did have one other question
20 or clarification, although it doesn't relate specifically to
21 the video trial issue.
22 THE COURT: Okay. Go ahead.
23 MS. DURHAM: In your order of this morning, you
24 mentioned that the counterfeiting claim had been decided on
25 liability and only damages. Is that --

1 THE COURT: That was a mistake. Sorry.

2 MS. DURHAM: Okay. Thank you, your Honor.

3 THE COURT: Yeah. Anything else from the defense?

4 MS. DURHAM: I think that covers it, your Honor.
5 Thank you.

6 THE COURT: Okay. So here's -- so I'm going to -- so
7 the key on this -- the key on the video invite I'm going to
8 send you is that one person cannot open it in two different
9 locations. In other words, if I send, just for example, a
10 video invite to Mr. Kucala and he basically says, oh, okay,
11 well, I can open it on my desktop or my laptop and I can have
12 the person I'm going to have act as a witness open it on an
13 iPad, the answer is, no, it won't work. It only will open one
14 place.

15 So what I'm going to do -- what I'd like to do is
16 send the invite to three different email addresses on each
17 side. And so let's just kind of figure out who those are
18 going to be right now. And then -- and whoever I send it to
19 can forward it to somebody. The whole point is you can't have
20 two people going off of an invite that sends the same email
21 address.

22 So what I propose to do would be to send it on the
23 plaintiff's side to Mr. Kucala, Mr. Norvell, and let's say
24 Mr. Kelly, because I'm looking at the docket and I've got
25 their email addresses. And on the defense side, send it to

1   Mr. Durham -- or Ms. Durham, Mr. Taufer, and I'm not sure -- I
2   know I've heard Mr. Schwartzman's name a lot.  Maybe he is the
3   third person.  You tell me.
4            MS. DURHAM:  Yes, your Honor, this is Gina Durham.
5   That would be -- that would be good.
6            THE COURT:  All right.  That's what I'll do then.
7            MS. DURHAM:  And, your Honor, I did think of one
8   additional question, if I may?
9            THE COURT:  Yeah.
10           MS. DURHAM:  I just want a clarification.  In terms
11  of trial days, do you expect it to go consecutively, and would
12  it be your normal trial day?
13           THE COURT:  That is a wonderful question.  That's a
14  wonderful question, which is a prelude to saying I'm not sure.
15           So I'm just going to tell you, having done a whole
16  bunch of video stuff, including a couple of hearings on a
17  judicial panel of multi-district litigation, they are more
18  taxing.  I think they're more taxing.  Not a lot.
19           Maybe rather than going from 9:00 to 5:00, we'll go
20  from like 10:00 to 4:00 or something like that.  But that's
21  something I haven't figured out yet, to be honest.
22           MS. DURHAM:  Okay.
23           THE COURT:  Okay.  Great.  So be looking for this
24  video invite from me which I'll send out later in the week.
25           Have a good day.  Take care.

1          MR. KUCALA:  Thanks a lot.

2          MS. DURHAM:  Thank you, your Honor.

3    (Which were all the proceedings had in the above-entitled

4 cause on the day and date aforesaid.)

5    I certify that the foregoing is a correct transcript from
the record of proceedings in the above-entitled matter.

6

7 Carolyn R. Cox                           Date
Official Court Reporter
8 Northern District of Illinois
/s/Carolyn R. Cox, CSR, RPR, CRR, FCRR

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25